OTA & HARA
A LIMITED LIABILITY LAW COMPANY

LEIGHTON M. HARA          7826-0
Lhara@ota-hara.com
RACHEL K.X. MURAKAMI   11534-0
rmurakami@ota-hara.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2860
Honolulu, Hawaii 96813
Tel. No. (808) 532-1728
Fax No. (808) 532-1729

Attorneys for Plaintiff
WAIOLI GONSALVES

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| WAIOLI GONSALVES,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>VDA, INC., a New Jersey corporation;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE PARTNERSHIPS 1-10; DOE<br>CORPORATIONS 1-10; and OTHER<br>DOE ENTITIES 1-10,<br><br>　　　　　　Defendants. | ) CASE NO.: _____<br>) (Other Contract)<br>)<br>) COMPLAINT FOR<br>) DECLARATORY JUDGMENT<br>) AND INJUNCTIVE RELIEF;<br>) EXHIBITS "A" – "B"; DEMAND<br>) FOR JURY TRIAL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY
## JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Waioli Gonsalves, hereby complains and petitions this Court for entry of a Declaratory Judgment, and Injunctive Relief, and Damages against Defendant VDA, Inc., a New Jersey corporation ("VDA" or "Defendant") as follows:

## PARTIES

1.      Plaintiff WAIOLI GONSALVES ("Gonsalves" or "Plaintiff") is and was at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

2.      Elevator Consulting Services, Inc. ("ECS"), was a Washington corporation licensed to do business in Hawaii, until it withdrew from Hawaii on or about October 17, 2024.

3.      From March 1, 2021, until October 17, 2024, Gonsalves was employed by ECS as an at-will employee pursuant to a certain employment agreement attached hereto as Exhibit A.

4.      Defendant VDA, also known as John A. Van Deusen & Associates, is and was at all times relevant herein a for-profit corporation licensed to do business in the State of Hawaii.  VDA is a New Jersey corporation with its principal place of business at 120 Eagle Rock Ave, Suite 310, East Hanover, New Jersey 07936.

2

5.     At all times relevant to this action, VDA engaged in commerce and conducted business in the State of Hawaii.

6.     In or around 2024, VDA acquired ECS, including its business name and operations, pursuant to an asset purchase agreement.

7.     From October 18, 2024, until January 6, 2026, Gonsalves was employed by VDA as an at-will employee.

8.     Gonsalves's principal place of employment under both ECS and VDA was in the State of Hawaii, where he resided and performed all of his work duties.

9.     Plaintiff has diligently and in good faith attempted to ascertain the existence, full names, and identities of all persons, entities, or other Defendants that may be legally responsible for Plaintiff's injuries and damages but currently does not have any knowledge or information regarding such other persons, entities, or other Defendants.

10.     The true names, identities or capacities, whether individual, corporate, associate, partnership, representative or otherwise, of Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10, and their involvement herein are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names and will seek leave of Court to amend his pleadings to set

forth the true names and identities of such fictitiously named Defendants when the same becomes known to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein by a fictitious name acted in some manner negligently, intentionally, wantonly, willfully, recklessly, maliciously and with conscious disregard of the consequences of their acts and is in some manner responsible and/or strictly liable to Plaintiff for the acts, conduct, omission and failures as hereinafter alleged concerning the events and happenings herein referred to and that said acts, conduct, omissions and failures, whether negligent, intentional, wanton, willful, reckless, malicious, or with conscious disregard of the consequences of their acts, directly and proximately caused injury and damage to Plaintiffs as herein alleged and otherwise.

## **JURISDICTION AND VENUE**

11. Jurisdiction is appropriate with this Court pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between parties as stated above, and the amount in controversy exceeds $75,000.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Rule 57 of the Federal Rules of Civil Procedure, because the employment agreement at issue was signed and executed in the State of Hawaii and the acts and omissions giving rise to this matter occurred and continue to occur in the District of Hawaii, and Defendant transacted business in this District.

4

## STATEMENT OF FACTS

*Gonsalves's Employment Agreement with ECS*

13. On February 18, 2021, Gonsalves entered into an employment contract (the "ECS Agreement") with ECS, effective March 1, 2021. Attached as Exhibit A.

14. On March 1, 2021, Gonsalves assumed his role as a Field Consultant for ECS in the State of Hawaii.

15. Pursuant to Section 3 of the ECS Agreement, Gonsalves' employment was on an 'at-will' basis and subject to the laws of the State of Washington. Exhibit A, §3.

16. Section 6.1 of the ECS Agreement included a covenant not to compete.

17. Specifically, Section 6.1 provides that:

For a period of two years after Gonzalves' employment with ECS has been terminated by either party, Gonsalves will not directly or indirectly:

6.1.1 enter into any competitive elevator consulting business in Washington, Oregon, Hawaii, Idaho, or Alaksa;

6.1.2  induce or attempt to persuade any former, current or future employee, agent, manager, consultant, director, or other participant in ECS's business to terminate such employment or other relationship in order to enter into any relationship with Gonsalves, any business organization in which Gonsalves is a participant in any capacity whatsoever, or any other business organization in competition with ECS's business; or

6.1.3  use contracts, proprietary information, trade secrets, confidential information, customer lists, mailing lists, goodwill, or other intangible property used or useful in connection with ECS's business.

18.    The ECS Agreement does not provide any compensation or severance to Gonsalves during the restricted period following termination of employment.  *Id*. at §6.

19.    Section 12 of the ECS Agreement purports that it shall be governed by and construed in accordance with the laws of the State of Washington. *Id*. at §12.

*VDA's 2024 Acquisition of ECS' Assets*

20.   In or around 2024, VDA acquired ECS' assets pursuant to an asset purchase agreement and ECS ceased operating.

21.   Thereafter, the ECS Agreement was purportedly assigned from ECS to VDA without Gonsalves's knowledge or consent.

22.   On or about October 30, 2024, Gonsalves received a Retention Bonus Agreement from VDA ("VDA Retention Agreement"), which he digitally signed.  Attached as Exhibit B.

23.   The VDA Retention Agreement did not expressly reference or incorporate the original ECS Agreement between ECS and Gonsalves.  *See generally* Exhibit B.

24.   Rather, the VDA Retention Agreement contained a complete agreement clause stating that it embodies the complete agreement and supersedes and preempts any prior understandings, agreements, or representations by or among the parties, written or oral.  *Id*. at §5(c).

25.   The VDA Retention Agreement sets forth terms and conditions of a non-discretionary bonus and stated that it was meant to supplement any existing compensation package already in place between VDA and Gonsalves.  *Id*. at §1(A).

26.     Section 5(f) sets forth that the VDA Retention Agreement is governed by the laws of the State of Delaware. *Id*. at §5(f).

*Termination and Post-Termination Conduct*

27.     On or about January 6, 2026, VDA terminated Gonsalves's employment.

28.     Following his termination, VDA informed Gonsalves that a COBRA continuation coverage notice ("COBRA notice") and corresponding enrollment materials would be sent within two weeks.

29.     During the course of his employment, Gonsalves was covered under ESC and subsequently VDA's Hawaii Medical Service Association ("HMSA") group plan.

30.     By January 20, 2026, two weeks after his termination, Gonsalves did not receive the COBRA notice or corresponding materials.

31.     Gonsalves wanted to participate in COBRA coverage.

32.     In or around November 2025, VDA's Human Resources department stated that Gonsalves had elected to continue coverage with HMSA rather than AETNA.

33.     Gonsalves did not receive the COBRA notice and/or corresponding enrollment materials, and, therefore, did not have an opportunity to participate or affirmatively opt out of coverage.

8

34. Subsequently, Gonsalves called HMSA who confirmed that Gonsalves was, in fact, covered under VDA's group plan.

35. On February 4, 2026, Gonsalves received the COBRA notice from VDA dated January 29, 2026.

36. The January 29, 2026, COBRA notice indicated continuation of health insurance benefits under Aetna, not HMSA which Gonsalves was covered by during his employment.

37. Due to the uncertainty and delay caused by VDA's conflicting information, Gonsalves was forced to enroll in coverage through Healthcare.gov to avoid a lapse in health insurance coverage.

38. Gonsalves seeks employment in his specialized field of expertise, elevator consulting, in Hawaii.

39. On or about February 6, 2026, VDA, through Greg Ernst, its Regional Vice President, Pacific Northwest, informed Gonsalves that it assumed ECS' contracts, including employment contracts, as part of the asset purchase agreement, and would seek to enforce ECS' non-compete with Gonsalves, thereby threatening to restrict his prospective employment opportunities in his home state.

## COUNT I
## DECLATORY JUDGMENT

40. Gonsalves incorporates by reference the preceding paragraphs as if fully restated herein.

9

41.     An actual controversy exists between Gonsalves and VDA concerning the enforceability of the non-compete provisions contained in the ECS Agreement.  The antagonistic legal positions of Gonsalves and VDA present this Court with imminent and inevitable litigation.

42.     Gonsalves hereby asserts a legal relation, status, right or privilege in which he has a concrete interest and VDA's legal position presents a challenge or denial to Plaintiff's asserted legal relation, status, right or privilege.

43.     This declaratory action will serve to terminate the uncertainty and controversy giving rise to this proceeding.

44.     As the purchaser of ECS' assets pursuant to an asset purchase agreement, the ECS Agreement in question was not assigned, and, therefore, privity of contract between Gonsalves and VDA with respect to the ECS Agreement does not exist.

45.     The ECS Agreement, an employment contract, is of a personal nature, and, therefore, cannot be assigned without consent.

46.     VDA cannot enforce the ECS Agreement, because Gonsalves did not consent to the assignment of the non-compete covenants.

*Non-Compete Provisions Unenforceable Under Hawaii Law*

47.     The laws of the State of Hawaii apply because Hawaii has the most significant relationship to the parties and subject matter and has a materially

greater interest in this matter.  It is undisputed that all of the work performed under the ECS Agreement for ECS and the subsequent work performed for VDA took place in the State of Hawaii.  All monies flowing from Hawaii based accounts serviced and marketed by Plaintiff came from Hawaii.

48.    Non-compete covenants must be ancillary to a legitimate business purpose that does not violate Hawaii's antitrust laws, and merely restricting competition is not a legitimate ancillary purpose.

49.    Notwithstanding the foregoing, the non-compete provision of the ECS Agreement is void and unenforceable, because it is overbroad in scope and duration and not reasonably necessary to protect a legitimate business interest.

*Non-Compete Provisions Unenforceable Under Washington Law*

50.    Even assuming, *arguendo*, Washington law governed the ECS Agreement, the ECS Agreement remains unenforceable.

51.    Pursuant to Washington law, a non-compete agreement must provide independent consideration for the restriction.  *See* Wash. Rev. Code § 49.62.020.

52.    The ECS Agreement failed to provide any independent consideration for the non-compete provision.

53. The ECS Agreement failed compensation or severance during the restricted period and exceeds the statutory 18-month presumption of reasonableness set forth in Wash. Rev. Code § 49.62.020.

54. Because the non-compete provision of the ECS Agreement, is void and unenforceable pursuant to Hawaii and even Washington law, the Court should declare that it is void and unenforceable as to VDA.

**COUNT II**
**VIOLATION OF ERISA**

55. The Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B) codified at 29 U.S.C. § 1132(a)(1)(B) expressly authorizes plan participants and beneficiaries to bring civil actions to recover benefits due under their plans, enforce their rights under plan terms, or clarify their rights to future benefits.

56. Gonsalves was a plan participant as defined in 29 U.S.C. § 1002(7).

57. 29 U.S.C. § 1162, requires that the employee benefit plan continue coverage that is identical to the coverage provided to similarly situated beneficiaries who have not experienced a qualifying event and any modification to the benefits offered to active employees must be applied equally to all qualified COBRA beneficiaries.

58.     29 U.S.C. § 1166, requires plan administrators to provide COBRA notice to qualified beneficiaries within 14 days of receiving notice of a qualifying event.

59.     Gonsalves' termination on January 6, 2026, constitutes a qualifying event under 29 U.S.C. § 1163.

60.     Upon Gonsalves's termination, on January 6, 2026, VDA was required to provide Gonsalves with COBRA continuation coverage notice no later than January 20, 2026 (14 days after the qualifying event).

61.     VDA sent Gonsalves the COBRA notice on January 29, 2026, nine (9) days after it was required to do so, which was received by Gonsalves on February 4, 2026.

62.     Accordingly, VDA failed to provide Gonsalves with a timely and accurate COBRA notice as required by 29 U.S.C. § 1163.

63.     As a direct and proximate result of VDA's ERISA violation, Gonsalves suffered damages in an amount to be determined at trial.

64.     VDA's violations of ERISA were willful and without justification, warranting the following statutory penalties.

65.     ERISA § 502(c)(1), codified at 29 U.S.C. § 1132(c)(1), Gonsalves is entitled to statutory penalties of up to $100 per day for each day of non-compliance.

66.    Pursuant to 29 U.S.C. § 1132(g)(1), Gonsalves is entitled to reasonable attorney's fees and costs in connection with this ERISA claim, as well as any other relief deemed appropriate by the court.

67.    Such declaratory relief will resolve the above-described controversy between the parties.

**COUNT III**
**INJUNCTIVE RELIEF**

68.    Gonsalves incorporates by reference the preceding paragraphs as if fully restated herein.

69.    Due to VDA's illegal actions as alleged above, Gonsalves is left with no recourse but to request an injunction from this Court ordering VDA to provide Gonsalves with COBRA coverage and permit Gonsalves to seek employment and/or work in the elevator industry within the State of Hawaii.

WHEREFORE, Gonsalves prays for judgment in his favor and against VDA as follows:

1.    A declaration that VDA is not entitled to enforce the non-compete provision of the ECS Agreement;

2.    A declaration that the non-compete provision of the ECS Agreement is void an unenforceable as a matter of law;

14

3.      That VDA be enjoined from enforcing or threatening to enforce the non-compete provisions in the ECS Agreement;

4.      That Gonsalves be awarded special and general compensatory damages;

5.      That Gonsalves be awarded punitive damages;

6.      That Gonsalves be awarded statutory penalties, including any pre- and/or post-judgment interest; and

7.      That Gonsalves be awarded such additional relief as the Court deems just and appropriate.

DATED:  Honolulu, Hawaii, March 6, 2026.

/s/  *LEIGHTON M. HARA*
LEIGHTON M. HARA
RACHEL K.X. MURAKAMI

Attorneys for Plaintiff
WAIOLI GONSALVES